IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 06-00710 WHA |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO SUPPRESS** |
| KATHERINE ELIZABETH PAIZ; LUIS ALBERTO GONZALEZ, | |
| Defendants. / | |

## INTRODUCTION

In this criminal action, defendant Luis Alberto Gonzalez moves to suppress a statement on the ground that he was in custody but was never provided *Miranda* warnings. This order holds that Gonzalez was not in custody during the interview at issue. Accordingly, *Miranda* warnings need not have been administered. Furthermore, any inquiry by Gonzalez about counsel during the interview had no legal effect because he was not in custody. Gonzalez's motion to suppress is therefore **DENIED**.

## STATEMENT

Defendant Gonzalez is charged in this action with conspiring to commit wire fraud, committing and aiding and abetting the commission of wire fraud, and using fire to commit a federal felony. At issue is a statement made to Federal Bureau of Investigation agents in July

2006. In the statement, Gonzalez admitted that he set fire to his wife's car as part of a plan to defraud her insurance company.

Unless otherwise noted, the facts are not in dispute. In June 2006, Gonzalez was convicted of felony narcotics and firearms violations in California state court, for which he was sentenced to a two-year term of probation. On July 14, 2006, Gonzalez's state probation officer, Julie Nie, was contacted by an FBI agent who indicated that the FBI was interested in speaking with Gonzalez. Nie called Gonzalez to arrange a convenient meeting for them at her office in Pittsburg, California. Nie and Gonzalez agreed that he would come to her office on July 18, 2006. Gonzalez arrived at the location and was told to produce a specimen for a urinalysis test. After Gonzalez produced the specimen, he spoke with Nie in a cubicle in an open area of the office. Once Nie was finished speaking with Gonzalez, she left him sitting at the cubicle. Nie went to speak with FBI Special Agents Van Nimitsilpa and Matthew Beaupain, who were elsewhere in the office. Nie informed the agents that she was finished talking with Gonzalez and that they could try to speak with him (Gonzalez Decl. ¶ 2; Nie Decl. ¶¶ 2, 5–8; Beaupain Decl. ¶ 3).

The agents walked into the room, where Gonzalez was waiting at the cubicle. The agents identified themselves as FBI agents and told him that they were interested in questioning him. The agents also told Gonzalez that he was not under arrest and that he was not obligated to speak with them. Gonzalez acknowledged that he understood this and said he was willing to talk to the agents (Beaupain Decl. ¶¶ 2–6).

The agents escorted Gonzalez down the hall to another office and closed the door. The agents did not lock the door. Gonzalez was seated facing the door, with an agent situated between Gonzalez and the door. Another agent sat to Gonzalez's side. Gonzalez would have had to walk past the agents to reach the door but he was not placed under any form of restraint. The agents did not provide Gonzalez with *Miranda* warnings (Gonzalez Decl. ¶ 3; Beaupain Decl. ¶¶ 5–6).

The agents then questioned Gonzalez about a burned car that had been found. There is disagreement about the duration of the questioning. According to Gonzalez, the session lasted over ninety minutes. According to Agent Beaupain, it lasted thirty to forty minutes. At several points during the interview, the agents advised Gonzalez that he was not under arrest and that he was free to leave (Gonzalez Decl. ¶ 3; Beaupain Decl. ¶ 7).

Both sides agree that at some point during the interview, Gonzalez asked about a lawyer. Gonzalez's declaration states that he "asked the agents about getting a lawyer" (Gonzalez Decl. ¶ 3). Agent Beaupain's declaration states that Gonzalez only asked "whether he needed a lawyer." The agents said that he did not need a lawyer because he was free to leave (Beaupain Decl. ¶ 8).[1]

According to Agent Beaupain, the questioning of Gonzalez resumed without incident (Beaupain Decl. ¶ 9). Gonzalez, however, alleges that after being told he could leave, he said "alright" and stood up to leave. One of the agents then reminded Gonzalez that he was on felony probation with a search condition. The agent allegedly told Gonzalez that they could come and search his residence. According to Gonzalez, he felt threatened by what the agent said and felt that he was not actually free to leave. The agents then continued their questioning (Gonzalez Decl. ¶ 4).

Gonzalez confessed his involvement in destroying the car. He told the agents details about how he had taken the car, doused it with gasoline, and set fire to it. Gonzalez then stated that he was ready for the agents to take him to jail. The agents informed him that he was not being arrested and was free to leave, which he did. Gonzalez was arrested three months later in November 2006 (Beaupain Decl. ¶¶ 9–10).

Gonzalez contends that the FBI agents failed to administer *Miranda* warnings before the interview and that his incriminating statement should be suppressed. He also contends that he invoked his right to counsel and that any discussion thereafter should be suppressed.

---

[1] According to the FBI report of the interview, "GONZALEZ asked if he needed a lawyer, and was again advised that he was not in custody and was free to leave at [any time]" (Blank Decl. Exh. A at 2).

3

**ANALYSIS**

**1. THE AGENTS DID NOT NEED TO PROVIDE *MIRANDA* WARNINGS.**

In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court held that a person who "has been taken into custody or otherwise deprived of his freedom of action in any significant way," must, prior to any questioning, "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." As has been held, however:

> An officer's obligation to administer *Miranda* warnings attaches only where there has been such a restriction on a person's freedom as to render him in custody. Whether a suspect is in custody turns on whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. This inquiry requires a court to examine the totality of the circumstances from the perspective of a reasonable person in the suspect's position.

*United States v. Crawford*, 372 F.3d 1048, 1059 (9th Cir. 2004) (en banc) (quotations and citations omitted). The test has also been described as an inquiry into whether "the officers established a setting from which a reasonable person would believe that he or she was not free to leave." *United States v. Kim*, 292 F.3d 969, 973–74 (9th Cir. 2002).

The Ninth Circuit has enumerated five factors that are "among those likely to be relevant to deciding" the question of custody: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Kim*, 292 F.3d at 974 (quoting *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001)). But "[o]ther factors may also be pertinent to, and even dispositive of, the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators; the [five] factors are simply ones that recur frequently."

The parties dispute whether the government or Gonzalez bears the burden of proving whether or not he was in custody during the questioning. This order need not decide the issue,

4

1 because even placing the burden on the government, Gonzalez's motion lacks merit. The
2 government has sufficiently demonstrated that Gonzalez was not in custody during the
3 interview. No *Miranda* warnings were necessary.[2]

4 Considering the Ninth Circuit's factors, the questioning here was not a custodial
5 interrogation for *Miranda* purposes. *First*, the language "used to summon" Gonzalez was not
6 indicative of custody. Gonzalez was not commanded to come to the probation office on the day
7 in question. He was contacted by his probation officer who asked if he could meet on July 17.
8 He told her that he was unavailable on the 17th. They then arranged to meet the following day
9 at 11:30 a.m., a time "that was convenient for both of [them]" (Nie Decl. ¶ 5). He arrived there
10 under his own power. *See United States v. Nieblas*, 115 F.3d 703, 705 (9th Cir. 1997)
11 ("Because Nieblas voluntarily appeared at the probation office for the interview, which was
12 arranged by appointment, and because she was free to leave, it was not a 'custodial
13 interrogation' that would trigger her *Miranda* rights."). Immediately before he spoke with the
14 agents, they identified themselves as FBI agents and specifically told him he was not under
15 arrest (Beaupain Decl. ¶ 4). They then told him that they were "interested" in talking to him
16 (Gonzalez Decl. ¶ 2). He went to the room with them voluntarily. This order finds that
17 Gonzalez was not directed to come to the office in a manner suggesting he was in custody.

18 *Second*, there is no indication in this record that Gonzalez was confronted with any
19 evidence of his guilt. The officers only questioned him about his role in the destruction of his
20 wife's car. This factor also suggests that there was no custodial interrogation.

---

23 [2] Based on the Court's research, it appears that the Ninth Circuit has never decided which side bears the initial burden of proving custody or a lack of custody. It has long been held that "a heavy burden rests on
24 the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda*, 384 U.S. at 475. But the question
25 at bar turns on whether the agents held Gonzalez in custody, not whether he waived his rights. The government points out that the Fifth Circuit has held that "the defendant bears the burden of demonstrating that statements
26 which the defendant seeks to suppress were made while the defendant was under custodial interrogation." *United States v. Webb*, 755 F.2d 382, 390 (5th Cir. 1985). As discussed above, however, this order does not
27 need to forecast whether the Ninth Circuit would adopt the Fifth Circuit's reasoning or some other approach.

5

*Third*, the physical surroundings of the interview were ambiguous as to intimating custody. Gonzalez was brought to a room with two agents and an agent was situated between Gonzalez and the closed door. On the other hand, he was *not* in handcuffs or a jail cell or a locked squad car. The door was unlocked. Gonzalez does not dispute that although he "would have had to have walked past [the agents] to get to the door, [the agents] were not blocking his path to it" (Beaupain Decl. ¶ 6).

*Fourth*, no pressure was applied to detain Gonzalez. He was never placed under any form of physical restraint and the agents told him several times that he was free to leave. The agents were also informally dressed and were not displaying any weapons. This demonstrates that no pressure was applied to Gonzalez. *See United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005) (holding that there was no custodial interrogation where "officers explicitly informed [the defendant] that their search had turned up no incriminating evidence, none of them displayed or otherwise brought attention to their weapons, and there was no intimation that they would not permit him to leave if he so desired").

Gonzalez contends, however, that he was subjected to "psychological restraints" that rendered the interview custodial. Specifically, he alleges that when he stood up at one point to leave, one agent told him that he was on felony probation with a search condition that would allow them to search his residence. Gonzalez alleges that this was psychological pressure that effectively confined him to the room. The decision upon which Gonzalez relies for this argument, *United States v. Beraun-Panez,* 812 F.2d 578, 580–81 (9th Cir. 1987), is distinguishable. There, the Ninth Circuit held that by "accusing [the defendant] repeatedly of lying, confronting him with false or misleading witness statements, employing good guy/bad guy tactics, taking advantage of [the defendant's] insecurities about his alien status, keeping him separated from his co-worker in a remote rural location, insisting on the 'truth' until he told them what they sought, the officers established a setting from which a reasonable person would believe that he or she was not free to leave."

6

Our case does not come close to the situation in *Beraun-Panez*. Here, Gonzalez rose to leave after the agents told him he could do so. Based on Gonzalez's declaration, the agent told him that he was on felony probation with a search condition. Reiterating *truthful* information to Gonzalez that he already knew — that the agents could search his residence — does not demonstrate a "relentlessness [that] gave rise to a psychological coercion beyond that inherent in a typical noncustodial interrogation." *Id.* at 580. This order finds that any pressure that was applied to Gonzalez did not render the interview custodial.

*Finally*, there is a factual dispute regarding the length of the interview. This order holds that, even assuming the interview lasted 90 minutes as Gonzalez contends, the duration was not enough to transform the interview into a custodial interrogation. Gonzalez relies on two decisions in which the Ninth Circuit held that lengthy interrogations were custodial. *See Beraun-Parez*, 812 F.2d at 579 (thirty to ninety minutes); *United States v. Wauneka*, 770 F.2d 1434, 1439 (9th Cir. 1985) (over an hour). In each of those decisions, however, the length of time was but one consideration, not the dispositive factor. In *Beraun-Parez*, the officers had exerted the "psychological restraints" discussed above. They had also "asserted their dominion over the interrogation site" by intercepting a co-worker who attempted to approach the suspect and sending him away. *Beraun-Parez*, 812 F.2d at 580–82. In *Wauneka*, the hour-long questioning "turned accusatory — [the defendant] was told that he supplied information that only a perpetrator would know, that he matched the description of the rapist, and that he had better tell the truth. . . . The FBI agents resumed the questioning despite the fact that Wauneka was visibly shaken by this ordeal." *Wauneka*, 770 F.2d at 1439. All of those facts distinguish the instant case from those Ninth Circuit holdings. Gonzalez was told several times that he could leave. He was never threatened, psychologically abused, or physically restrained. This order finds that although a 90 minute conversation *might* point toward a custodial interrogation, consideration of the remaining factors demonstrates that there was no custodial interrogation even assuming it was 90 minutes. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) ("Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply

7

by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question."). In short, there was no "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994).

The instant case is similar in many ways to *Mathiason*. There, the Oregon state police were investigating a burglary and asked to meet with the defendant, who was a suspect. The investigating officer called the defendant and asked where it would be convenient to meet him. The defendant expressed no preference. The officer and the defendant agreed to meet at the state patrol office. When the defendant arrived, the officer informed him that he was not under arrest. The defendant then had a thirty-minute conversation with the officer in an office with a closed door. During the discussion, the officer advised the defendant that the police believed he was involved in the burglary. He falsely told the defendant that his fingerprints had been found at the scene. The defendant then admitted that he had taken the property. At the end of the interview, the officer advised the suspect that he would not be arrested at that time and the suspect was allowed to leave the station. *See Mathiason*, 429 U.S. at 493–94.

The Supreme Court found that there had not been a custodial interrogation. In so holding, the Supreme Court stated: "[T]here is no indication that the questioning took place in a context where [the defendant's] freedom to depart was restricted in any way. He came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a [half]-hour interview [the defendant] did in fact leave the police station without hindrance. It is clear from these facts that Mathiason was not in custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 495 (quotations omitted).

Here, Gonzalez came to the probation office voluntarily after finding a time convenient for both his probation officer and him. Like the defendant in *Mathiason*, he appeared voluntarily. When the FBI agents told him they were interested in talking to him, he again acquiesced voluntarily. They did not threaten him or otherwise coerce him into talking to him.

8

1 Before the interview began, they told him that he was not under arrest. He was told again
2 several times during the interview. Finally, like the defendant in *Mathiason*, he left the
3 probation office after the interview. This order holds as the Supreme Court did in *Mathiason* —
4 Gonzalez was not in custody and accordingly the FBI agents had no duty to administer the
5 *Miranda* warnings.

### 2. *EDWARDS* DOES NOT APPLY.

Gonzalez also contends that he invoked his right to counsel and that the agents should have stopped questioning when he did so. This order disagrees. Gonzalez was not in custody when he inquired about counsel. Thus, the agents had no duty to cease questioning.

"*Miranda* . . . declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). The Supreme Court in *Edwards* held that "an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484–85. An uncharged individual who is out of custody, however, has no right to counsel. *See Minnesota v. Murphy*, 465 U.S. 420, 424 n.3 (1984) ("Although a request for a lawyer during custodial interrogation is sufficient to invoke the privilege against self-incrimination, Murphy was not in custody, and he had no federal right to have an attorney present at the meeting.") (citations omitted). The Ninth Circuit has held: "It is well established . . . that the Fifth Amendment right to counsel under *Miranda* does not vest until a defendant is taken into custody. Therefore, if [the defendant] was not in custody during the first interview, the reference to his lawyer at that time cannot be considered an invocation of *Miranda* rights." *United States v. Hines*, 963 F.2d 255, 256 (9th Cir. 1992); *see also McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991) (noting that "[w]e have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation'").

Because, as discussed, Gonzalez was not in custody during his interview, neither *Miranda* nor *Edwards* applies. When Gonzalez "asked the agents about getting a lawyer," that statement had no legal effect (Gonzalez Decl. ¶ 3). The agents did not violate his rights under *Edwards*.

## CONCLUSION

For the foregoing reasons, Gonzalez's motion to suppress is **DENIED**. An evidentiary hearing is not necessary, as this order has found that the motion may be denied even construing all factual disputes in Gonzalez's favor. Accordingly, the evidentiary hearing tentatively scheduled for May 16, 2007, is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: April 5, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10